**REINS OF LIFE, INC., Plaintiff,**

v.

**VANITY FAIR CORPORATION and H.D. Lee Company, Inc., Defendants.**

**No. 3:97–CV–649RM.**

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 8, 1997.

C. Kenneth Wilber, Jr., South Bend, IN, for Plaintiff.

Timothy J. Abeska, David R. Kibbe, Roemer and Mintz, South Bend, IN, Paul J. Kennedy, Vincent V. Carissimi, Kathryn A.

Donohue, Pepper Hamilton & Scheetz, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Reins of Life, Inc. filed its complaint for trademark infringement on September 29. The complaint contains a request for a temporary restraining order and preliminary injunction to prohibit the defendants—Vanity Fair Corporation and H.D. Lee Company, Inc.—from using Reins of Life's mark in connection with a planned national fund-raising campaign on October 10. The court denied the motion without prejudice due to Reins of Life's failure to comply with District Rule 65.1, which requires a movant for a preliminary injunction to so move in a separate motion and submit a brief demonstrating the propriety of such relief. On October 6, Reins of Life submitted a brief in support of its request. No separate motion has been filed, but since that requirement's primary purpose is to be certain that such motions do not go through the clerk's office unnoticed, the court ignores that defect.

█ Preliminary injunctions rarely should be granted without allowing an opportunity to present evidence beyond affidavits, *State of Illinois v. Peters*, 871 F.2d 1336, 1342 (7th Cir.1989), but if the written submissions make clear that additional evidence presented in court would not entitle the movant to the relief sought, denial of such a motion without a hearing is permissible. *See, e.g., Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429 (7th Cir.1986). This is one of the reasons the court takes seriously the district rule's requirement of a supporting brief: a written submission allows the court to determine whether to require a defendant to send lawyers to court on very short notice or, even more extraordinarily, to enjoin a defendant without first affording an opportunity to be heard. In this case, Reins of Life's brief makes it clear that neither action is justified.

Based on the complaint, the defendants' answer, and the parties' briefs, it appears that the parties are competing over the use of the concept of "denim day"[1] as a charitable fund-raising technique. Reins of Life is a nonprofit Indiana corporation that provides children and adults with therapeutic riding lessons to build self-esteem and self-confidence and to provide physical therapy. Reins of Life began the use of "Denim Day" in 1995 as a means of raising funds for these purposes. Under the Reins of Life program, individuals are asked to donate money to Reins of Life, which then asks the individuals' employers to allow the donating individuals to wear denim products (such as jeans) to work. Reins of Life applied for a registration of "Denim Day" in 1995 and received a certificate of registration for the mark in 1996.

H.D. Lee Company began using the Denim Day concept as a fundraiser in 1996, albeit on a considerably broader scale than Indiana's Reins of Life. Lee promoted October 26, 1996 nationally as "Lee National Denim Day" and raised $1.4 million in funds for the Komen Foundation's use in combating breast cancer. Lee tried to register "Lee National Denim Day", but the United States Patent and Trademark Office rejected the attempt in 1997 in light of Reins of Life's prior registration. In April and May 1997, Reins of Life wrote Lee demanding that Lee cease and desist the use of its mark. Correspondence continued[2] until a few weeks before this case was filed.

Lee has scheduled October 10 as this year's "Lee National Denim Day." In fur-

---

**1.** Reins of Life carefully uses the symbol (R) in connection with the term "Denim Day" in its papers in this court, and has a claim of entitlement to do so by virtue of the mark's registration, but the record does not disclose how, if at all, Reins of Life used its mark commercially. Lee couches its papers before the court in terms of "LEE(R) National Denim Day," but the materials before the court do not indicate that this configuration was used commercially. It appears that Lee's commercial use consisted of "Lee National Denim Day TM". It may be that none of this will matter to the case's outcome, but the court sees no reason, at this point, to take sides tacitly in this battle of symbol usage. For purposes of this opinion, the court simply elides the symbols.

**2.** If the record before the court is complete, the correspondence was only sporadic, but the court recognizes the parties may not have submitted all correspondence.

therance of that event, Lee has placed considerable advertising in national publications, has invested about $1 million in advertising and promotional materials, and has contributed another $300,000 to underwriting a television program (which already has been taped) on breast cancer to be shown nationally on the Lifetime Channel.

■ Reins of Life's complaint asks that Lee and its parent corporation, Vanity Fair, be enjoined from "Releasing, distributing, using, advertising, promoting or otherwise using or otherwise making public the registered mark Denim Day ®." Given the timing of Reins of Life's request, the court must deny the motion.

As the party seeking a preliminary injunction under federal trademark law, Reins of Life must demonstrate some likelihood of prevailing on the merits, an inadequate remedy at law, and irreparable harm if preliminary relief is denied. If Reins of Life meets that burden, the court must decide whether the irreparable harm that Reins of Life would suffer if injunctive relief were denied outweighs any irreparable harm that Lee and Vanity Fair would suffer if injunctive relief were granted, and further decide whether the public interest—the injunction's effect on non-parties—favors the injunction. *TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 881 (7th Cir.1997). In this circuit, the court then weighs all of the factors on a "sliding scale" approach: the greater the risk of harm to Reins of Life, the lesser the required showing of likelihood of success on the merits, and vice versa. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir.1992). Ultimately, the test is designed to minimize the cost of error by balancing the risks of an erroneous grant of an injunction against the risk of an

erroneous denial of the injunction. *Cronin v. United States Dept. of Agriculture*, 919 F.2d 439, 444–445 (7th Cir.1990).

The court accepts for today's purposes that Reins of Life has a better than negligible chance of success on the merits (which suffices in this circuit as a likelihood of success on the merits), if for no reason other than that Reins of Life owns the mark the defendants are using. Lee and Vanity Fair (who will simply be called "Lee" in the balance of this opinion in the interests of readability) argue that "Denim Day" is not a protectable mark (although they curiously preface this legal argument with "Upon information and belief"), and that "Denim Day" is merely descriptive or generic. Perhaps Lee ultimately will succeed on this argument or perhaps not, but Reins of Life is entitled to the benefit of a rebuttable presumption in favor of the mark's validity, which suffices, at this stage of the proceedings, to warrant a finding of some likelihood of success on the merits.

■ Lee also argues that there is no likelihood of confusion between Reins of Life's mark and "Lee National Denim Day." Again, Lee ultimately may be found to be correct (there is little reason for one to think Reins of Life would name Lee in its mark or be national), but such a finding entails consideration of too many factors [3] to allow a finding that Reins of Life cannot prevail on any claim of confusion.[4] The court assumes, for purposes of deciding whether Reins of Life has sufficient chance of success to warrant a hearing on its motion, that Reins of Life has demonstrated some likelihood of success on the merits of its claim of trademark violation.

Reins of Life cannot possibly show, however, that the balance of harms favors issuing the injunction, even when the thumb of likeli-

---

**3.** In determining whether a likelihood of confusion exists: the court is to consider (1) the marks' similarity; (2) instances of actual confusion; (3) the similarity of the goods or services provided under the marks; (4) the area and manner of concurrent use; (5) the strength of the plaintiff's marks; (6) the degree of care likely to be used by customers; and (7) the defendant's intent. *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 615 (7th Cir.1993); *International Kennel Club v. Mighty Star, Inc.*, 846

F.2d 1079 (7th Cir.1988). No single factor is dispositive; the weight accorded each depends on the particular facts of the case. *Id.* at 1087.

**4.** Further, while a failure to prove actual confusion would defeat a claim for damages, it would not defeat equitable relief for Reins of Life if infringement is proven. *Web Printing Controls v. Oxy–Dry*, 906 F.2d 1202, 1205 (7th Cir.1990).

hood of success is placed on its side of the scales. Reins of Life argues that Lee National Denim Day will cause it irreparable harm because Lee will benefit improperly from the use of the mark by the generation of goodwill toward Lee "and the concomitant increase in the sales of Lee's products, and Reins of Life, Inc., will inevitably lose fund raising abilities because of the dilution of their registered service mark." Ill-gotten gain to the infringer is not the same as irreparable harm to the party whose mark is infringed. If Reins of Life's fund raising is reduced because employers in the area in which Reins of Life operates are unwilling to give employees repeated privileges to wear denim to work, that reduction is compensable in damages. Harm that is compensable in damages is not irreparable. *McKenzie v. City of Chicago,* 118 F.3d 552 (7th Cir.1997).

More importantly, the court is to examine the irreparable harm to the movant if the request for injunctive relief is denied. In light of the advertising campaign Lee already has undertaken with respect to its planned national denim day, it is difficult to see how much further incremental harm will befall Reins of Life if Lee is allowed to complete what is alleged to be its infringement. If the acts to be enjoined constitute infringement, October 10 will be the culmination of a period of infringement, not the date of infringement. Attached to Lee's brief are full page advertisements that already have run in publications such as *People* magazine and *Forbes* magazine; Reins of Life has not presented evidence from which it could be found that allowing Lee to use the phrase "denim day" for another three days will dilute the mark any more than already has occurred. If a hearing were to be scheduled, even on short notice, even more of whatever harm there might be to Reins of Life will pass from the "future harm" category into that of "past harm."

Lee, in contrast, would suffer enormous cost if the injunction were issued. It is unclear how much, if any, of the advertising and programming could be recalled if the court were to enjoin the use of the mark. Lee presumably would be required to employ its best efforts to prevent the planned uses of the mark on October 10 and on the days (more accurately, the day and a half) leading up to October 10. Extraordinary efforts would be required, and those extraordinary efforts would be costly, as would the costs of withdrawing the advertising and programming even if Lee had the luxury of time. Any use of the "Denim Day" mark that survived Lee's eradication effort presumably would pose the risk of a contempt citation.

Finally, with respect to the balance of the parties' harms, Reins of Life's own actions belie any finding of irreparable harm. One reason Lee is so deeply into its campaign that it could not even attempt to cancel without enormous cost is that although Reins of Life knew of the threatened infringement no later than April and perhaps as early as January (an April 7 letter to Lee makes reports having seen a Lee Denim Day reference in the January 3, 1997 *USA Today*), this suit and request for injunctive relief were not filed until September 29, when less than two weeks remained before October 10. Delay in action is not a determinative factor in the balancing test, but Reins of Life's failure to act earlier suggests its own belief that it does not need an injunctive to avoid irreparable harm, *Hybritech, Inc. v. Abbott Laboratories,* 849 F.2d 1446, 1447 (Fed.Cir. 1988); *Ideal Indus. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1025 (7th Cir.1979), and while the delay gives rise to no issue of laches because Lee has known all along of Reins of Life's claim to the mark, the delay increases the costs to Lee if a preliminary injunction issues improvidently. For all of these reasons, the balance of harms weighs very heavily against the issuance of the requested preliminary injunction.

The public interest—the interest of persons who are not parties to this suit—presents the remaining factor for consideration. This factor, too, favors the injunction's denial. Non-parties have strong interest in both sides of this dispute. Reins of Life does considerable good in its geographic area in providing self-esteem and therapy that cannot be replicated from other experiences. Were this good balanced against the mere sale of blue jeans, even lots of blue jeans, this factor would favor the injunction's issuance.

Reins of Life, however, appears to seek an injunction against Lee's use of the mark "denim day"—a use that, regardless of whether it infringes another's rights, raised $1.4 million for the fight against breast cancer in its first year out of the gate. Beyond the dollars, Lee's use and promotion of its denim day will educate men and women about breast cancer. Given the breadth of the good Lee proposes to accomplish—and notwithstanding that Lee may have to answer to Reins of Life in damages if it is found liable under the Lanham Act for the vehicle by which it accomplishes this good—the public interest favors denial of the injunction.

After considering the risks of harm to Reins of Life, Lee, and non-parties, the balance against issuing the injunction is sufficiently great to be decisive without the need for a hearing. For all these reasons, the court DENIES the plaintiff's motion for temporary restraining order or preliminary injunction (filed September 29, 1997).

SO ORDERED.