**Ryan GOLDSTEIN, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**The HOME DEPOT U.S.A., INC., Defendant.**

**Civil Action No. 1:08–CV–1825–CC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 11, 2009.

Cullin A. O'Brien, Paul J. Geller, Stuart A. Davidson, Coughlin Stoia Geller Rudman & Robbins, Boca Raton, FL, James Boyd Page, Alan R. Perry, Jr., Corey Daniel Holzer, Marshall P. Dees, Michael Ira Fistel, Jr., Holzer, Holzer & Fistel, LLC, John C. Herman, Ryan K. Walsh, Coughlin Stoia Geller Rudman & Robbins, LLP, William Woodhull Stone, Webb, Klase & Lemond, L.L.C., Atlanta, GA, Matthew R. Wilson, David P. Meyer, David P. Meyer & Associates Co., LPA, Columbus, OH, Thomas K. Caldwell, Thomas A. Hargett, Maddox, Hargett & Caruso, Fishers, IN, for Plaintiff.

Dwight J. Davis, Frederica Joy White, Jonathan R. Chally, Sidney Stewart Haskins, II, King & Spalding, LLP, Atlanta, GA, for Defendant.

### OPINION AND ORDER

CLARENCE COOPER, District Judge.

The above-styled action is before the Court on the following motions: (1) Plaintiff's Combined Motion for Preliminary Injunction and for Expedited Discovery [Doc. No. 4]; (2) The Home Depot U.S.A., Inc.'s Motion to Strike [Doc. No. 26]; (3) Plaintiff's Amended Combined Motion for Preliminary Injunction and for Expedited Discovery [Doc. No. 30]; (4) Home Depot's Motion to Dismiss Plaintiff's First Amended Class Action Complaint [Doc. No. 34]; and (5) The Home Depot U.S.A., Inc.'s Motion to Strike [Doc. No. 51]. For the reasons set forth below, the Court grants in part and denies in part Home Depot's Motion to Dismiss Plaintiff's First Amended Class Action Complaint [Doc. No. 34], denies in part and denies as moot in part Plaintiff's Combined Motion for Preliminary Injunction and for Expedited Discovery [Doc. No. 4], denies in part and denies as moot in part Plaintiff's Amended Combined Motion for Preliminary Injunction and for Expedited Discovery [Doc. No. 30], and denies as moot Home Depot U.S.A., Inc.'s Motions to Strike [Doc. Nos. 26, 51].

## I. BACKGROUND

### A. *Facts*

Plaintiff Ryan Goldstein ("Plaintiff"), individually and on behalf of all others similarly situated, filed this putative class action against Defendant The Home Depot U.S.A., Inc. ("Defendant"), alleging that Defendant has failed to install clothes dryers (the "Dryers") properly and that Defendant, upon information and belief, continues to do so. (First Am. Class Action Compl. ¶ 10.) Despite marketing itself as employing "professional installers" of products purchased from it, guaranteeing its installations, calling its installations "reliable" and "quality," and referring to its installations as "installations you can trust," (*id.* ¶ 1), Plaintiff alleges that Defendant has failed to follow manufacturers' specifications for the type of vent that should be used during installation of the Dryers, (*id.* ¶¶ 4–5). Plaintiff alleges that the Dryers themselves and/or the installation manuals for the Dryers contain warning signs regarding the installation of vents, which specify that plastic, thin foil, or non-metal flexible ducts should not be used when installing the Dryers. (*Id.* ¶ 3.) As a result of the alleged failure by Defendant and its installers to follow the warnings of the manufacturers, Plaintiff alleges that the manufacturers' warranties have

been violated and that dangerous conditions that can result in death or fire have been created. (*Id.* ¶ 6.)

Plaintiff alleges that he, like other members of the putative class, entered into a contract with Defendant for the installation of his Dryer and paid an additional sum of money for the installation. (*Id.* ¶¶ 2, 9.) Plaintiff purchased a Maytag Dryer from Defendant in or about June 2005 and contracted with Defendant for the additional sum of $145 for delivery and "professional" installation of the Dryer by Defendant. (*Id.* ¶¶ 18, 23.) In April 2008, Plaintiff allegedly discovered, for the first time, the warning contained in the Dryer's manual, which stated that "[p]lastic or non-metal flexible duct presents a potential fire hazard." (*Id.* ¶ 24.) The manual also contained a picture warning against the use of plastic, thin foil, or non-metal flexible duct. (*Id.* ¶ 25.) Additionally, on the back of Plaintiff's Dryer was a picture showing the use of a heavy metal vent and not the use of a foil or plastic vent for use when installing the Dryer. (*Id.* ¶ 26.) After discovering the warning labels and the pictures for the first time, Plaintiff inspected the Dryer vent utilized by Defendant when it installed the Dryer and discovered that it was a metal foil vent. (*Id.* ¶ 27.) Plaintiff's Dryer manual further stated that an improper installation of the Dryer risks voiding the warranty. (*Id.* ¶ 29.)

Plaintiff alleges he had no part in the decision to use a foil vent. (*Id.* ¶ 30.) According to Plaintiff, he did not select the vent and did not know what vent Defendant used. (*Id.*) Rather, Plaintiff alleges Defendant selected the vent and that he relied upon Defendant and its "professional installers" to install the Dryer properly, including using a vent not specifically pro-hibited by the Dryer's manufacturer. (*Id.*) Plaintiff also alleges he did not know that Maytag forbids the use of foil vents or that installation of a foil vent may void Maytag's warranty on the Dryer. (*Id.*) Had he known, Plaintiff alleges he would have insisted that Defendant use the proper type of vent and install the Dryer correctly. (*Id.*) Notwithstanding the foregoing, Plaintiff's installation delivery receipt, which was a part of Plaintiff's installation contract and was both initialed and signed by Plaintiff, specifically noted the type of transition ducting used to install Plaintiff's Dryer, a "Flex Dryer Duct." [1] (*See* Ex. A to Home Depot's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's First Amended Class Action Complaint.)

In addition to manufacturer specifications, Plaintiff alleges that many governmental, consumer, and trade groups have cautioned against the use of metal foil or plastic vents. (First Am. Class Action Compl. ¶ 35.) Further, Plaintiff points out that, according to the U.S. Fire Administration, clothes dryers were involved in an estimated 15,600 U.S. structure fires, fifteen deaths, 400 injuries, and $99 million in direct property damage, annually, between 2002–2004. (*Id.* ¶ 36.) Plaintiff alleges that the leading cause of the fires was due to the improper installation of vents and the excessive build up of lint within the Dryer and ventilation tubes. (*Id.* ¶ 37.) Plaintiff alleges that Defendant has knowledge of these risks but still has chosen to install Dryers using improper materials. (*Id.* ¶ 38.)

As a result of Defendant's alleged actions, Plaintiff claims that Defendant has breached its installation contracts with all putative class members by not installing

---

1. Plaintiff's delivery receipt document, a portion of Plaintiff's contract with Defendant for delivery and installation services, is properly before the Court on Defendant's motion to dismiss, as the document is central to Plaintiff's claim and the authenticity of the document is not disputed. *See Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir.2005).

the Dryers according to the manufacturers' specifications. (*Id.* ¶¶ 11, 15, 38, 50–56, 57–66.) Plaintiff alternatively claims that Defendant has been unjustly enriched. (*Id.* ¶¶ 67–76.) Plaintiff also alternatively claims that Defendant is liable for money had and received. (*Id.* ¶¶ 77–83.) Plaintiff includes a claim for injunctive relief. (*Id.* ¶¶ 84–91.) In addition to injunctive relief, Plaintiff seeks money damages or specific performance. (*Id.* ¶¶ 56, 66.) Plaintiff alternatively seeks reimbursement, restitution, and disgorgement from Defendant. (*Id.* ¶¶ 76, 83.)

### B. *Procedural History*

Plaintiff filed his original Complaint in this action on May 21, 2008. Shortly thereafter, Plaintiff filed a Combined Motion for Preliminary Injunction and for Expedited Discovery [Doc. No. 4]. On July 21, 2008, Defendant filed a Motion to Dismiss Plaintiff's Complaint [Doc. No. 20] and also filed a Memorandum of Law in Opposition to Plaintiff's Combined Motion for Preliminary Injunction and for Expedited Discovery [Doc. No. 21]. Plaintiff then filed a Reply in Support of Plaintiff's Motion for a Preliminary Injunction and Expedited Discovery [Doc. No. 23] and included as an attachment the Affidavit of Ronald E. Parsons [Doc. No. 23–2]. On that same day, Plaintiff filed his Response and Incorporated Memorandum of Law in Opposition to Defendant's Motion to Dismiss [Doc. No. 24]. Shortly thereafter, on August 13, 2008, Defendant filed a Motion to Strike [Doc. No. 26], seeking an order from the Court striking the Affidavit of Mr. Parsons. That motion, too, was fully briefed by the parties.

On August 19, 2008, Plaintiff filed a First Amended Class Action Complaint [Doc. No. 27], which effectively rendered the Motion to Dismiss Plaintiff's Complaint [Doc. No. 20] moot.[2] On August 28, 2008, Plaintiff filed an Amended Combined Motion for Preliminary Injunction and Expedited Discovery [Doc. No. 30], which is essentially identical to the first motion seeking preliminary injunctive relief and expedited discovery. On September 8, 2008, Defendant filed its Motion to Dismiss Plaintiff's First Amended Class Action Complaint [Doc. No. 34]. Defendant also filed a second Motion to Strike [Doc. No. 51], after Plaintiff again included the Affidavit of Ronald E. Parsons as an attachment to his Reply in Support of Plaintiff's Amended Motion for a Preliminary Injunction and Expedited Discovery [Doc. No. 47].

All motions filed by the parties have been fully briefed and are ripe for review. The Court first will address Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint [Doc. No. 34]. As Plaintiff's Combined Motion for Preliminary Injunction and for Expedited Discovery [Doc. No. 21] and Plaintiff's Amended Combined Motion for Preliminary Injunction and Expedited Discovery [Doc. No. 30] are essentially identical, the Court does not address these motions separately and refers to them both as "Plaintiff's Motion for Preliminary Injunction," which the Court will address immediately after resolving Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint. [Doc. No. 34]. Because the Court resolves Plaintiff's Motion for Preliminary Injunction without the need for additional evidence or a hearing and without considering the Affidavit of Ronald E. Parsons, the Court denies as moot Plaintiff's request for expedited discovery [Doc.

---

2. The Court entered an Order denying the Motion to Dismiss Plaintiff's Complaint as moot on September 15, 2008.

Nos. 21, 30] and Defendant's Motions to Strike [Doc. Nos. 26, 51].

## II. DEFENDANT'S MOTION TO DISMISS

### A. *Standard*

In deciding a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must limit its consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir.2004). A complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1966–67, 167 L.Ed.2d 929 (2007). The complaint must allege facts that "raise a right to relief above the speculative level." *Id.* at 1959, 1965. " 'Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.' " *Friedman v. Market Street Mortg. Corp.*, 520 F.3d 1289, 1295 n. 6 (11th Cir.2008) (quoting *Tucker v. National Linen Serv. Corp.*, 200 F.2d 858, 864 (5th Cir.1953)).

### B. *Discussion*

Defendant moves the Court to dismiss Plaintiff's First Amended Class Action Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defendant maintains that Plaintiff's claims are barred by the voluntary payment doctrine. As for the unjust enrichment claim and the claim for money had and received, Defendant also asserts that these equitable claims are not viable, given the existence of a written contract covering the subject matter of the dispute. The Court addresses each of Defendant's contentions below.

### 1. *Voluntary Payment Doctrine*

▉ Defendant argues that Plaintiff's claims are barred by the voluntary payment doctrine, which is codified at O.C.G.A. § 13–1–13, and provides the following:

> Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule prescribed in this Code section.

O.C.G.A. § 13–1–13. Pursuant to this statute, payments are deemed voluntary if they are made either through ignorance of the law or with the requisite factual knowledge and they are not "induced by misplaced confidence, artifice, deception, or fraudulent practice on the part of the person to whom the money is paid." *Cotton v. Med–Cor Health Info. Solutions, Inc.*, 221 Ga.App. 609, 611, 472 S.E.2d 92, 96 (1996) (citation omitted). Voluntary payments cannot be recovered unless they were made "under an urgent necessity" or to prevent the immediate seizure of person or property. *Id.*

▉ Defendant contends the doctrine applies because Plaintiff paid $145.00 for installation and delivery services with full knowledge of the relevant facts concerning the installation. To the extent that Plaintiff did not have actual knowledge of the relevant facts, Defendant argues that Plaintiff had the means to know the relevant facts. That is, Plaintiff had the means to know the type of transition ducting that would be used to install his Dryer

as well as the contents of the manufacturer's installation guidelines.

■ Plaintiff contends that the voluntary payment doctrine is inapplicable because he did not have actual knowledge of either the manufacturers' specifications for proper vent material or the specific vent material that Defendant used during installation of his Dryer. However, as Defendant argues, "Georgia courts routinely have applied the voluntary payment doctrine to preclude recovery of payments made without actual knowledge of all the facts as long as the payer had constructive knowledge of the material facts." *Camafel Bldg. Inspections, Inc. v. Bellsouth Adver. & Publ'g Corp.*, No. 1:06–CV–1501–JEC, 2008 WL 649778, at *4 (N.D.Ga. Mar. 7, 2008) (citations omitted); *see also Applebury v. Teachers Retirement Sys. of Georgia*, 275 Ga.App. 194, 194–95, 620 S.E.2d 452 (2005) ("This statute applies both to one who pays money with knowledge of all the facts and to one who pays by mistake without a valid reason for failing to ascertain the truth-or, in other words, to cases involving both actual and constructive knowledge on the part of the payor."); *Fitzgerald Water, Light & Bond Comm'n v. Shaw Indus., Inc.*, 270 Ga.App. 68, 70, 606 S.E.2d 10 (2004) ("even though [defendant] complains that it lacked actual knowledge of the rates it was charged, it had 'the means of such knowledge' at its disposal"); *see also Liberty Nat'l Life Ins. Co. v. Radiotherapy of Georgia, P.C.*, 252 Ga.App. 543, 546–47, 557 S.E.2d 59, 63 (2001) (stating that the voluntary payment doctrine applies "to one who pays by mistake without a valid reason for failing to ascertain the truth"). Because there is no dispute that Plaintiff received a manual with his Dryer, had the ability to look at the back of his Dryer, and initialed a receipt for the installation that specified that the duct material being used was a "Flex Dryer Duct," the Court agrees with Defendant, at least for the purpose of resolving this motion, that Plaintiff had constructive knowledge of all material facts when he paid for the Dryer installation.

■ Notwithstanding Plaintiff's constructive knowledge of all material facts, the Court is not convinced, at this stage, that the "misplaced confidence" exception to the voluntary doctrine does not apply. Indeed, Plaintiff specifically alleges the following in his Complaint: "On its website, defendant Home Depot touts itself as employing 'professional installers' of products purchased from it. Home Depot further guarantees its installations, calling them 'reliable' and 'quality,' and that they are 'installations you can trust.'" (First Am. Class Action Compl. ¶ 1) (footnotes omitted). Plaintiff further alleges: "Based on, among other things, Home Depot's 'guaranteed,' 'quality,' 'reliable,' 'professional' installations, thousands of people nationwide contracted with Home Depot to properly install clothes dryers ... in their homes and businesses." (*Id.* ¶ 2.) Plaintiff emphasizes these allegations or portions of the allegations throughout the First Amended Class Action Complaint. (*See id.* ¶¶ 5, 6, 12, 18, 23, 30.) Defendant argues that Plaintiff cannot rely on the misplaced confidence exception because Plaintiff fails to allege that he placed confidence in Defendant to select the appropriate duct for his Dryer. However, Plaintiff plainly alleges in the First Amendment Class Action Complaint that he "relied upon Home Depot and its 'professional installers' to properly install the Dryer, including using a vent not specifically prohibited by the Dryer's manufacturer." (*Id.* ¶ 30.) In light of this allegation, the Court concludes that it would be premature to dismiss Plaintiff's claims based upon this voluntary payment doctrine. Upon further development of the record, Plaintiff may be able to prove that he put misplaced confidence in Home Depot and

its installers and that his payment, as a consequence, was not voluntary.

In sum, whether the voluntary payment doctrine applies is not susceptible to resolution on the instant motion to dismiss, as the First Amended Class Action Complaint alleges facts suggesting that the "misplaced confidence" exception to the voluntary payment doctrine might apply. At this early stage of the litigation, the Court finds there are sufficient allegations in the First Amended Class Action Complaint for Plaintiff's claims to survive Defendant's challenge based on the voluntary payment doctrine.

## B. *Equitable Claims*

■ Defendant next argues that Plaintiff's equitable claims are barred because the parties' relationship is governed by the installation and delivery contract. Defendant points out that the First Amended Class Action Complaint does not describe the material terms of the dryer installation contract with Defendant. Defendant argues, however, that Plaintiff's allegation of the existence of a contract that governs the parties' relationship precludes Plaintiff from bringing claims for unjust enrichment and money had and received.

■ The Court agrees. Under Georgia law, unjust enrichment is only available in the absence of an enforceable contract. *See, e.g., J'Carpc, LLC v. Wilkins,* 545 F.Supp.2d 1330, 1340 (N.D.Ga.2008) ("In the absence of an enforceable contract, a plaintiff may be able to recover under a theory of unjust enrichment, claiming a benefit conferred on the defendant for which the plaintiff received no corresponding return."). Similarly, money had and received is an equitable theory of recovery that applies only when there is no legal contract between the parties. *Baghdady v. Central Life Ins. Co.,* 224 Ga.App. 170, 171, 480 S.E.2d 221 (1996) (holding that claim of money had and re-

ceived is an equitable theory that applies only where a contract does not exist). While a party may plead equitable claims in the alternative, the party may only do so if one or more of the parties contests the existence of an express contract governing the subject of the dispute. *Cf. American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.,* 426 F.Supp.2d 1356, 1371 (N.D.Ga.2006) ("When neither side disputes the existence of a valid contract, the doctrine of promissory estoppel does not apply, even when it is asserted in the alternative."). No such dispute exists here. Additionally, here, although Plaintiff alleges that the unjust enrichment and money had and received claims are plead in the alternative to the breach of contract claims, they have not been properly plead. Plaintiff has incorporated into both his equitable claims the allegation that he and Defendant entered into a contract that required Defendant to provide installation services within the manufacturer's specifications. Given the incorporation of this allegation into the equitable counts, the equitable counts cannot withstand the motion to dismiss. *See American Casual Dining,* 426 F.Supp.2d at 1371 (holding that the plaintiff could not claim within a single count that there was an agreement and that the defendant was unjustly enriched); *cf. Georgia Realty & Ins. Co. v. Oakland Consol. of Ga. Inc.,* 113 Ga.App. 231, 233, 148 S.E.2d 53 (1966) (dismissing cause of action for quantum meruit for failure to state a claim where the count for quantum meruit incorporated allegations of an express contract); *Millican Elec. Co. v. Fisher,* 102 Ga.App. 309, 310, 116 S.E.2d 311 (1960) ("The averment of an express contract within the allegations of a single count predicated on the theory of quantum meruit is sufficient to subject the count to demurrer."). For the above reasons, the equitable claims are subject to dismissal

for failure to state a claim upon which relief can be granted.

## III. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### A. *Standard*

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (emphasis in original; citation omitted). A movant requesting injunctive relief must show (1) a substantial likelihood of success on the merits; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury outweighs whatever damages the proposed injunction may cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs.,* 425 F.3d 964, 968 (11th Cir.2005); *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir.1998); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.,* 51 F.3d 982, 985 (11th Cir.1995).

### B. *Discussion*

██ Plaintiff moves the Court for entry of a preliminary injunction requiring Defendant to provide notice of the allegedly improper installations to the individuals for whom Defendant has already installed Dryer vents and precluding Defendant from improperly installing Dryer vents in the future. As a matter of law, and without the need for a hearing, the Court concludes that Plaintiff lacks standing to seek the injunctive relief requested.

The injunction proposed by Plaintiff, if granted, would in no way benefit Plaintiff. As Plaintiff is already aware of the alleged problems with Defendant's installations, Plaintiff does not need notice. Nor will Plaintiff be affected by any change in Defendant's installation services, as Plaintiff has not alleged that he plans in the future to purchase a Dryer from Defendant or that he plans in the future to have a Dryer installed by Defendant. Notably, Plaintiff does not request that Defendant replace his transition duct or otherwise modify the installation configuration on his Dryer. Hence, Plaintiff does not allege the possibility of future injury, and Plaintiff's proposed injunction would not impact him in any way. For these reasons, Plaintiff does not have standing to pursue the requested injunction. *See Wooden v. Board of Regents of Univ. Sys. of Georgia,* 247 F.3d 1262, 1284 (11th Cir.2001) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate-as opposed to a merely conjectural or hypothetical-threat of *future* injury.") (emphasis in original).

Further, because the proposed injunction would not benefit Plaintiff and no class has been certified in this case, Plaintiff does not have standing to request an injunction that affects all Home Depot Dryer purchasers nationwide. *See Mack v. HH Gregg, Inc.,* No. 1:08–cv–0664–DFH–WTL, 2008 WL 4082269, at *1 (S.D.Ind. Aug. 21, 2008). In *Mack,* a factually similar putative class action alleging improper dryer installation by HH Gregg, Inc. and Gregg Appliances, Inc., the plaintiffs sought preliminary injunctive relief in the form of an order that required defendants (1) to stop installing dryers with flexible metal foil vents, (2) to identify customers who had dryers installed with metal foil vents, and (3) to send those customers notices of potential risks. The *Mack* court denied the motion for preliminary injunction because, among other reasons, the form of injunctive relief sought would not actually benefit the named plain-

tiffs and no class had been certified. *Id.* at *1.

▉ Plaintiff argues that the *Mack* court was constrained by binding Seventh Circuit precedent, which held that a district court is precluded from issuing an injunction that benefits third parties but is broader than necessary to protect the plaintiffs in the case. *See McKenzie v. City of Chicago,* 118 F.3d 552, 555 (7th Cir.1997). While the Court does not disagree with Plaintiff's assessment, the Court finds the *McKenzie* and *Mack* decisions highly persuasive. As the *McKenzie* court stated, when a class has not been certified, "the only interests at stake are those of the named plaintiffs." *Id.* (citing *Baxter v. Palmigiano,* 425 U.S. 308, 310 n. 1, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)). Injunctions may not be issued to provide relief for non-parties. *McKenzie,* 118 F.3d at 555.

▉ The Eleventh Circuit has not directly addressed the issue presented, but this Court's review of Eleventh Circuit case law indicates that the decisions reached in the *McKenzie* and *Mack* cases were correct. In the Eleventh Circuit, even if a class has already been certified, the named plaintiff still must have standing to pursue injunctive relief. *Church v. City of Huntsville,* 30 F.3d 1332, 1340 (11th Cir.1994) ("Thus, unless the plaintiffs have alleged that one of the *named* plaintiffs is in real and immediate danger of being personally injured by the city's enforcement of its building code and zoning ordinance, the plaintiff class lacks standing to challenge the alleged city practice, even if the persons described in the class definition would have standing themselves to sue.") (citations and internal quotations omitted); *cf. Lynch v. Baxley,* 744 F.2d 1452, 1456 (11th Cir.1984) ("Individual standing requirements must be met by anyone attempting to represent his own interest or those of a class. If the named plaintiff seeking to represent a class fails to establish the requisite case or controversy, he may not seek relief on his behalf or on that of the class."). Consistent with the decisions in *McKenzie* and *Mack,* the Eleventh Circuit's *Church* decision instructs that district courts are to base awards of injunctive relief on the particular circumstances of the named plaintiffs. *Church,* 30 F.3d at 1341 (vacating part of injunctive relief awarded by district court because the plaintiffs did not face a real and immediate danger of injury that would be remedied by the portion of the injunction awarded). Given Plaintiff's failure in this case to show a real threat of future injury to himself and the total lack of benefit Plaintiff would receive from the injunction he proposes, the absence of a certified class in this case actually is irrelevant. Plaintiff's own lack of standing to pursue the injunctive relief requested would preclude him from seeking such relief for a class, even if one were certified. *See id.*

Thus, Plaintiff cannot seek an injunction from which he would not benefit and for non-parties that he does not yet represent. As such, Plaintiff's Motion for Preliminary Injunction is due to be denied.[3]

## IV. CONCLUSION

As set forth above, the Court **GRANTS in part** and **DENIES in part** Home De-

---

3. In light of the basis for this Court's denial of Plaintiff's Motion for Preliminary Injunction, the Court finds that the expedited discovery sought by Plaintiff in connection with Plaintiff's Motion for Preliminary Injunction is unnecessary and would be a waste of the parties' time and resources. The Court therefore denies the request for expedited discovery as moot. Further, given the irrelevance of the Affidavit of Ronald E. Parsons to the Court's analysis of Plaintiff's Motion for Preliminary Injunction, the Court denies as moot The Home Depot U.S.A., Inc.'s Motions to Strike [Doc. Nos. 26, 51].