881 F.2d 446
 58 USLW 2148, RICO Bus.Disp.Guide 7293
 Gerald T. FLYNN, John Anderson, David Milligan and Magdeline
Miskulin, all individually and for the use of others
similarly situated, John Kayon, Precision Flexmold, Inc., a
Wisconsin corporation, Plaintiffs-Appellants,
v.
Stephen M. MERRICK and Fishman, Merrick & Perlman, P.C., an
Illinois legal corporation, Flexmold, Inc., an Illinois
corporation located in Addison, Illinois, Dr. F.J.L.
Blasingame, John C. Blasingame, Richard Christensen, Allen
Buhler, Judith Hartig and Beatrice Bliwas, Defendants-Appellees.
 No. 87-3039.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 5, 1989.
Decided Aug. 7, 1989.
 
 Gerald P. Boyle, Gerald P. Boyle, S.C., Michael J. Steinle, Thomas G. Wilmouth, Milwaukee, Wis., for plaintiffs-appellants.
 John S. Jude, Albert Jude & Van Remmen, S.C., Susan E. Simanek, Racine, Wis., Thomas R. Schrimpf, Kluwin, Dunphy & Hankin, Milwaukee, Wis., Herbert Beigel, Beigel & Sandler, Paul R. Shuldiner, Chicago, Ill., Douglas J. Carroll, Arnold Murray O'Neil & Schimmel, Milwaukee, Wis., Richard A. Kranitz, Law Offices of Richard A. Kranitz, Grafton, Wis., for defendants-appellees.
 Before CUMMINGS, WOOD, Jr., and RIPPLE, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Plaintiffs-appellants Gerald T. Flynn, John Anderson, David Milligan, Magdeline Miskulin, and John Kayon ("Flynn Group") were minority shareholders and debenture holders in Precision Flexmold, Inc., a Wisconsin corporation ("Precision"). Precision was formed to develop and exploit a flexible molding process used in industrial ap lications. The Flynn Group invested heavily in Precision but with no success, and losses mounted. The Flynn Group and Precision sought relief for their lost investments from a number of parties in many different courts and through multiple complaints.
 
 
 2
 In this particular case, the Flynn Group and Precision filed various actions against the defendants-appellants, who are collectively known as the "Chicago Takeover Group" for their involvement in the acquisition of Precision's patents by Flexmold, Inc., an Illinois corporation ("Flexmold"). The Flynn Group and Precision alleged violations of due process and the Racketeer Influenced and Corrupt Organizations Act ("RICO").[1] The district court dismissed all the members of the Flynn Group due to lack of standing and also found that they had failed to raise all the necessary elements of a RICO claim. The Flynn Group appeals that decision.
 
 
 3
 The district court had jurisdiction over this case under 28 U.S.C. Sec. 1331 for causes of action arising under 18 U.S.C. Sec. 1964 and 42 U.S.C. Secs. 1983, 1985(3), and 1988, as well as any pendant state claims under United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Flynn Group appeals from the district court's order of August 16, 1985, which became a final judgment following the entry of judgment by the district court on December 8, 1987.[2] We review this case under 28 U.S.C. Sec. 1291.
 
 I. FACTUAL BACKGROUND
 
 4
 This long and confusing saga began when Raymond Putzer developed and secured patents on a flexible molding process for use in industry. Putzer, an original defendant in this case who was later dismissed, formed Precision to oversee the development of improvements in the process and to license the process to others. In 1974, Putzer needed additional funds to operate Precision. He contacted Gerald Flynn, who claims to have raised approximately $500,000 through the sale of personal debentures to investors. Much of that money was invested in Precision, but by 1975 Precision apparently needed more money. Flynn bought more shares and sold more debentures. Despite this new infusion of capital, Precision ran out of funds in 1976 and essentially ceased operations.
 
 
 5
 Litigation arising out of this situation commenced in 1977 when the Wisconsin Securities Commission began a securities fraud investigation into the sale of the Flynn Group debentures. A settlement was reached in that case, and the Flynn Group itself mounted a shareholders' derivative action in Wisconsin state court alleging fraud on the part of Putzer, claiming he had misrepresented the commercial value of the molding process. This suit was later settled through an assignment of royalty income. A receiver was appointed to manage the affairs of the moribund Precision.
 
 
 6
 This case derives from the court-approved sale of Precision's assets, including its patents, to Flexmold. The Flynn Group claims that Precision's assets were sold at an unfair price, rendering its interest in Precision valueless and ending Precision's ability to continue as a going concern. The Flynn Group filed this lawsuit in federal district court against the so-called Chicago Takeover Group, which was composed of the business people who purchased Precision's assets and the attorneys who represented them. In an extended and tortuous complaint, the Flynn Group appears to claim that the Chicago Takeover Group conspired to purchase Precision's assets unfairly, to the injury of the Flynn Group.
 
 
 7
 Although it is the Second Amended Complaint that is the subject of this lawsuit, the Flynn Group has remained incapable of clarifying exactly what is at issue in this suit. After slogging through the morass of accusations and assertions that make up this complaint, we can identify three conspiracies that appear to be the objects of the Flynn Group's enigmatic claims. First, the Flynn Group alleges that the original directors of Precision conspired to use fraud and misrepresentation to induce the Flynn Group's investment in the company. Second, it claims that the receiver appointed to manage Precision and the Wisconsin state judge who supervised Precision conspired with some members of the Chicago Takeover Group to deprive the Flynn Group of the relief it deserved in state court, violating its right to due process of law. Finally, the Flynn Group claims that the Chicago Takeover Group conspired to acquire the assets of Precision with inadequate consideration in violation of RICO.
 
 
 8
 The district court dismissed all the members of the Flynn Group due to lack of standing. Precision remained in the lawsuit. The district court also dismissed the Flynn Group's due process claims against all the defendants and the RICO claim against all the defendants except Richard Christensen and Beatrice Bliwas. The two remaining defendants were also the majority stockholders of Precision. The district court granted their motion to dismiss the entire lawsuit with prejudice and this appeal followed.
 
 II. DISCUSSION
 
 9
 As an initial matter, we now address Count I of the Flynn Group's complaint and ask whether, apart from the alleged violations of RICO, the Flynn Group has made out a case that the defendants used fraud and misrepresentation to get the group's members to invest in the company. First, the vague allegations of fraud laid out in Count I of the complaint do not meet the standard set out in Rule 9(b) of the Federal Rules of Civil Procedure which requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The cryptic statements found in the complaint do not establish fraud to the degree of particularity required under Rule 9(b). "[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir.1985). Even if the repetitious claims found in Count I did satisfy the demands of Rule 9(b), Count I seems to be directed at the members of the original board of directors of Precision, and not at the present appellees. The allegations of fraud or misrepresentation inducing the original purchases of stocks and debentures found in Count I do not apply to the Chicago Takeover Group.
 
 
 10
 Turning to the RICO and civil rights claims, we must examine the district court's decision to dismiss the Flynn Group for lack of standing. Plaintiffs Flynn and Miskulin were shareholders of Precision. They sold debentures to plaintiffs Anderson and Milligan. Plaintiff Kayon was president of Precision and was also apparently a shareholder or debenture holder. These members of the Flynn Group brought suit as individual stockholders or debenture holders. They claim that the directors of Precision owed a fiduciary duty directly to them as shareholders in addition to the directors' duty to the corporation itself. The district court concluded that as individual shareholders, they were not directly injured by any alleged conduct of the defendants and therefore lacked standing to pursue their claims.
 
 
 11
 As a general principle, a corporate shareholder does not have an individual right of action against third parties for damages to the shareholder resulting indirectly from injury to the corporation. Twohy v. First Nat'l Bank of Chicago, 758 F.2d 1185, 1194 (7th Cir.1985). Wisconsin law makes it clear that causes of action belonging to the corporation cannot be maintained by the individual shareholders unless they have suffered direct injury. Rose v. Schantz, 56 Wis.2d 222, 201 N.W.2d 593, 597 (1972). This court has recognized the exception to the general rule for injuries suffered by the shareholder that are separate and distinct from those suffered by other shareholders. Twohy, 758 F.2d at 1194. The Flynn Group claims that the board of directors mismanaged Precision, which decreased the value of the interest held by the shareholders and debenture holders. It is clear that the alleged injury is an injury to the corporation--any injury to the shareholders was an indirect result of the damage done to the corporation and as such, it does not create the necessary direct and independent harm required to maintain shareholder standing. "[D]iminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right." Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir.1981). This court has determined that "the investors in the firm suffer when the firm incurs a loss, yet only the firm may vindicate the rights at issue." Carter v. Berger, 777 F.2d 1173, 1175 (7th Cir.1985). The Flynn Group has not shown any reason to abrogate this longstanding rule and the decision of the district court will be upheld.
 
 
 12
 The district court also found that the Flynn Group did not have standing to maintain a civil rights action under 42 U.S.C. Sec. 1983. The district court correctly determined that aplaintiff-shareholder cannot maintain a civil rights action for damages suffered by the corporation. See Erlich v. Glasner, 418 F.2d 226, 227-28 (9th Cir.1969). Filing suit under 42 U.S.C. Sec. 1983 does not diminish the requirement that the shareholder suffer some individual, direct injury.
 
 
 13
 The Flynn Group also claimed to have standing to bring an action under RICO. 18 U.S.C. Sec. 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court...." The Sixth Circuit dealt squarely with the question of whether a shareholder may sue under RICO for a diminution in the value of shares in Warren v. Manufacturers Nat'l Bank, 759 F.2d 542 (6th Cir.1985). In Warren, the plaintiff, the principal stockholder in a corporation, claimed that he and the corporation had been defrauded by a third party, forcing the corporation into bankruptcy. The plaintiff claimed that he had been injured when his investment became worthless due to the bankruptcy. TheWarren court rejected the plaintiff's argument that he had standing under 18 U.S.C. Sec. 1964(c) and applied the general rule that a shareholder's rights are merely derivative to RICO cases. The Second Circuit in Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2d Cir.), cert. denied, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986), agreed with the court in Warren, finding that "any decrease in value of plaintiffs' shares merely reflects the decrease in value of the firm as a result of the alleged illegal conduct" and did not create standing for the shareholders. See also Roeder v. Alpha Industries, Inc., 814 F.2d 22, 29-30 (1st Cir.1987). This court has stated that in RICO cases "an indirectly injured party should look to the recovery of the directly injured party, not to the wrongdoer, for relief." Carter, 777 F.2d at 1176. We find the reasoning of the court in Warren to be persuasive. We hold that in a RICO action, absent a showing of individual and direct injury, shareholders in a corporation injured by a third party in violation of RICO do not have standing to bring individual causes of action.
 
 
 14
 The district court's decision to dismiss the Flynn Group plaintiffs for lack of standing was correct. The Flynn Group plaintiffs have not shown that they were individually and directly injured by the alleged conduct of the Chicago Takeover Group. Because we find that the Flynn Group plaintiffs lacked standing to bring this lawsuit, we find it unnecessary to reach other issues raised in this appeal.
 
 III. CONCLUSION
 
 15
 For the reasons stated above, the district court's dismissal of plaintiffs Gerald T. Flynn, John Anderson, David Milligan, Magdeline Miskulin, and John Kayon is AFFIRMED.
 
 
 
 [1]
 The Flynn Group also alleged various violations of equal protection which were dismissed by agreement of the parties. These issues will not be addressed in this appeal
 
 
 [2]
 This case made its way to this court once before. In Flynn v. Merrick, 776 F.2d 184 (7th Cir.1985), we held that the Flynn Group could not file an interlocutory appeal of the district court's order dismissing most of the parties. The district court had not certified the order for immediate appeal and, lacking a showing of cause by the Flynn Group, this court dismissed the appeal. Flynn, 776 F.2d at 185