# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3128

WISCONSIN RIGHT TO LIFE, INCORPORATED
and WISCONSIN RIGHT TO LIFE POLITICAL
ACTION COMMITTEE,

*Plaintiffs-Appellants,*

*v.*

JOHN C. SCHOBER, chairperson of the Wisconsin
State Elections Board; and each of its members,
DONALD R. GOLDBERG, SHANE FALK, MARTHA LOVE,
PATRICK J. HODAN, DAVID HALBROOKS, GORDON MYSE,
KIRBY BRANT, JOHN P. SAVAGE, and KEVIN J. KENNEDY,
its executive director,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-C-367—**Barbara B. Crabb**, *Chief Judge.*

———————

ARGUED JANUARY 15, 2004—DECIDED APRIL 27, 2004

———————

Before COFFEY, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* Plaintiffs Wisconsin Right to Life, Inc. and Wisconsin Right to Life Political Action Committee (collectively "Right to Life") brought suit against the

individual members of the Wisconsin State Elections Board, seeking injunctive relief against a 2002 Wisconsin campaign finance law. Because the district court had already declared the statute to be unconstitutional in a previous case, *Wisconsin Realtors Ass'n v. Ponto*, 233 F. Supp. 2d 1078 (W.D. Wis. 2002), the district court concluded that Right to Life lacked an Article III case or controversy and dismissed the case. We affirm.

## I. History

Right to Life vigorously participates in elections and promotes its views in other fora for public discussion. The Board "has general authority over and responsibility for administering the state's laws relating to elections and election campaigns." *Wis. Realtors Ass'n*, 233 F. Supp. 2d at 1082.

In July of 2002, Wisconsin enacted a statute which included a series of changes to its campaign finance laws. *See* 2001 Wis. Act 109 (codified throughout Wis. Stat. § 11); *see also Wis. Realtors Ass'n*, 233 F. Supp. 2d at 1081-83 (briefly describing the legislative history and purported effect of key provisions of the statute). The amendments were scheduled to go into effect on July 1, 2003. Many individuals and organizations, including Right to Life, that participated in Wisconsin politics were concerned that their activities would be curtailed by Act 109.

The constitutionality of the statute was in doubt from the beginning. On July 26, 2002, the State's Attorney General filed a petition with the Wisconsin Supreme Court, seeking a declaratory judgment as to the constitutionality of the amendments. Interestingly, the petition included the following disclosure: "[a]s officers of the Court . . . the Office of the Attorney General must advise the Court that it has concluded that the constitutionality of the provisions noted above cannot be defended because they are plainly in con-

flict with well-established constitutional principles." *In Re Constitutionality of the Revisions to the Wisconsin Campaign Finance Law Enacted in the 2002 Special Session of the Legislature*, Pet. For Leave to Commence Original Action at 6. The Wisconsin Supreme Court declined to issue an opinion on the constitutionality of the statute.

Also on July 26, 2002, a coalition of Wisconsin political associations, *not* including Right to Life, filed suit in the Western District of Wisconsin to challenge the statute's constitutionality. *See Wis. Realtors Ass'n*, 233 F. Supp. 2d at 1081. The district court, on December 11, 2002, held that one section of the statute violated the First Amendment on its face.[1] Moreover, because the statute included a non-severability clause, the court held that all of the campaign finance sections of Act 109 were "voided."[2] The district court enjoined the Board from enforcing the statute against the *Wisconsin Realtors Ass'n* plaintiffs. The Board did not appeal.

Of course, the fact that a district court declared the statute to be unconstitutional does not automatically remove the offending text from Wisconsin law. Since January of 2003, a group of legislators has attempted to formally

---

[1] The provision "prohibits any independent group from making a communication featuring a candidate within 30 days of an election unless it has filed a report detailing 'the name of each candidate who *will be* supported or whose opponent *will be* opposed and the total disbursements *to be* made.'" *Wis. Realtors Ass'n*, 233 F. Supp. 2d at 1090 (emphasis in original) (quoting § 1uck of 2001 Wis. Act 109).

[2] "Section 9115(2y)(b) of 2001 Wis. Act 109 requires that *all* of the new campaign finance provisions be invalidated if a court finds *any* provision unconstitutional." *Wis. Realtors Ass'n*, 233 F. Supp. 2d at 1093 (emphasis in original). The *Wisconsin Realtors Ass'n* court goes on to describe a lone exception to this ruling that is not relevant to the case before us.

repeal Wisconsin Act 109 and make other changes to Wisconsin law. *See* 2003 Senate Bill 12, *available at* http://www.legis.state.wi.us/2003/data/SB12hst.html. Because the bill is still pending, however, Wisconsin Act 109 remains on the books. In fact, the Board's website includes a link to the body of Wisconsin campaign finance law, including Act 109.

On January 15, 2003, Right to Life requested an Advisory Opinion from the Board on whether it would enforce the provisions of the statute—held to be unconstitutional one month earlier—against Right to Life in the next election in July of 2003. On January 28, 2003, the Board, for reasons known only to its members, summarily declined to issue such an opinion.

On July 11, 2003, after the purported effective date of the statute and less than two weeks before the special elections scheduled for July 22, Right to Life filed suit in the Western District of Wisconsin, seeking a temporary restraining order and a preliminary injunction against the Board. Right to Life feared that the Board would enforce the statute because: (1) the injunctive relief provided to the *Wisconsin Realtors Ass'n* plaintiffs did not extend to non-parties; and (2) the Board refused to assure Right to Life that the law would not be applied.

After the litigation ensued, the Board hastily issued a letter to Right to Life indicating that it would not enforce the law against the organization. Nevertheless, Right to Life persisted in seeking injunctive relief.

The district court below considered the pleadings of Right to Life and the Board and held a hearing. The court concluded that the case or controversy requirement, U.S. Const. art. III, § 2, was not met at the time of the commencement of the suit and dismissed the case. The district court also expounded alternate grounds for its decision by pointing to the post-litigation letter from the Board that

made clear that the Board considered the statute to be unconstitutional and void, thus mooting Right to Life's case.

The district court suggested that the Board should change its website to reflect the *Wisconsin Realtors Ass'n* decision. The Board complied with that request, and the website now explains that by "linking its website to [Wisconsin campaign statutes], the Elections Board, in no way, is attempting to enforce, adopt[,] or apply any of the statutory language that has been held unconstitutional . . . ." *See* http://elections.state.wi.us/.

## II.  Analysis

Under Article III of the Constitution, the judicial power of the United States extends only to cases and controversies. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). This jurisdictional requirement ensures that the resources of the federal judiciary are not expended on advisory opinions and hypothetical disputes. "Concepts such as standing, mootness[,] and ripeness assure that cases will be litigated by those having an actual stake in the outcome and that decisions will be made in an arena of real and substantial problems to be redressed by specific solutions." *Jorman v. Veterans Admin.*, 830 F.2d 1420, 1424 (7th Cir. 1987).

Here, the Board asserts that Right to Life lacks standing, or, alternately, that the case is moot. We review de novo the legal questions of standing, *Plotkin v. Ryan*, 239 F.3d 882, 884 (7th Cir. 2001), and mootness, *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 928-29 (7th Cir. 2003) ("*Federation*"). We review factual determinations necessary to the questions of standing and mootness for clear error, but this standard of review does not apply to the case at hand because the district court was able to dismiss on justiciability grounds without making factual findings.

### A. Standing

The required elements of Article III standing are: "(i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relation between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision." *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004) (quoting *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Right to Life, the party invoking federal jurisdiction, bears the burden of establishing standing. *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999).

To satisfy the injury-in-fact requirement, Right to Life "must establish that [it] has sustained or is immediately in danger of sustaining some direct injury." *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001). Because the statute has not been enforced against Right to Life (or anyone else for that matter), Right to Life needs to show a "reasonable probability" that it will suffer "tangible harm." *Shimer v. Washington*, 100 F.3d 506, 508 (7th Cir. 1996) (quoting *Hoover v. Wagner*, 47 F.3d 845, 847 (7th Cir. 1995)). Mere speculation is not enough to establish an injury in fact. *See Tobin for Governor*, 268 F.3d at 528 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

Right to Life submits that the threat of enforcement inherent in the statute chilled its participation in the July 2003 special election and will continue to chill its speech unless the federal courts provide injunctive relief. "A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need

not show that the authorities have threatened to prosecute him; the threat is latent in the existence of the statute." *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) (internal citations omitted); *see Virginia v. Am. Booksellers Ass'n Inc.*, 484 U.S. 383, 393 (1988). The instant case, however, presents a unique circumstance because the statute at issue has been declared unconstitutional by a district court and that ruling was not appealed.

Although it is highly unusual to seek injunctive relief when a judgment that was not appealed has already rendered a challenged statute unconstitutional, Right to Life's argument in favor of Article III standing is not "frivolous," as the Board contends. Right to Life presents a two-step argument. First, Right to Life points out that the injunction entered against the Board to prevent enforcement of the statute against the *Wisconsin Realtors Ass'n* plaintiffs did not extend to Right to Life. Indeed, district courts lack the authority to enjoin the "enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs." *McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)); *see also* Fed. R. Civ. P. 65(d) ("Every order granting an injunction . . . is binding only upon the parties to the action . . . ."). Right to Life is correct in asserting that the injunction against enforcement granted in the *Wisconsin Realtors Ass'n* case does not protect it, a non-party to the *Wisconsin Realtors Ass'n* case.

The second step of Right to Life's argument is that the declaratory judgment granted in the *Wisconsin Realtors Ass'n* case does not limit the power of the Board to bring prosecutions under the statute. Certainly, the statute cannot be repealed by a district-court opinion; only the Wisconsin legislature can repeal the statute. Furthermore, a district court's declaration that the statute is unconstitutional does not automatically stop state officials from trying to enforce the statute. Coupled with the Board's refusal to

issue an advisory opinion, Right to Life reasons that this is enough to present a live controversy to the federal courts.

Right to Life's argument, however, fails to tie this theoretical harm to an actual and imminent threat of enforcement. The Board did not appeal the *Wisconsin Realtors Ass'n* case. Implicitly, the Board has conceded that the statute is unconstitutional. The State's Attorney General conceded *before* the *Wisconsin Realtors Ass'n* litigation that the statute was unconstitutional in its petition to the Wisconsin Supreme Court to determine the constitutionality of Act 109. Right to Life makes no effort to satisfy its burden of persuasion by showing that any Wisconsin official, let alone the Board, has ever tried to enforce a statute in these circumstances.

Notwithstanding its curious and abstruse refusal to respond to Right to Life's inquiry before the filing of this case, we do not assume that the Board intended to ignore its responsibilities under the Constitution. If the Board had wished to contest the results of the *Wisconsin Realtors Ass'n* case, it could have appealed that case to this court. Right to Life's injury simply is conjectural, not actual or imminent. We are not convinced that, at the time of the commencement of this suit, there was a "reasonable probability" that the Board would enforce this statute.

Our decision is fortified by language from a case Right to Life quoted in its brief, albeit without the italicized portion: "*Pending review in the Court of Appeals and in this Court*, the Government has been free to continue to apply the statute [that had been declared unconstitutional by the district court]." *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155 (1963) (emphasis added). Unlike the *Kennedy* case, the Board did not appeal the decision in the *Wisconsin Realtors Ass'n* case. This would be a different case if *Wisconsin Realtors Ass'n* were still working its way through the appeals process.

Because there is no injury in fact, Right to Life could not present a case or controversy required by Article III at the commencement of the litigation. However, even assuming *arguendo* that Right to Life had Article III standing, this case was mooted by events occurring subsequent to its filing.

## B. Mootness

Under Article III, "cases that do not involve 'actual, ongoing controversies' are moot and must be dismissed for lack of jurisdiction." *Federation*, 326 F.3d at 929 (quoting *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990-91 (7th Cir. 2000)). Mootness is often described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *E.g.*, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997); *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). *But see Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189-90 (2000) (explaining that this description of mootness is "not comprehensive"). The party asserting mootness bears the burden of persuasion. *Laidlaw*, 528 U.S. at 189.

In analyzing whether this case is moot, then, we must consider any changes in the relationship between the parties that have occurred since July 11, 2003, the date litigation commenced. Most notably, the Board finally issued a letter clearly indicating that it would not enforce the statute against Right to Life because it considered the statute to be unconstitutional. Furthermore, since the district court's decision, the Board added a disclaimer to its website link to the Wisconsin statutes. This disclaimer makes clear that the Board's link to the statutes is not an attempt to "enforce, adopt, or apply" the statutory language held to be unconstitutional in *Wisconsin Realtors Ass'n*.

Even if Right to Life had standing at the commence-
ment of this litigation, the Board's subsequent actions have
mooted the case. The statute was held to be unconstitu-
tional before its effective date and has never been enforced.
The Board's private and public assurances, evidenced by the
letter and website disclaimer, that the statute will not be
enforced in the future means there is no behavior to enjoin.
In *Ragsdale v. Turnock*, 841 F.2d 1358 (7th Cir. 1988),
*appeal dismissed*, 503 U.S. 916 (1992), we refused to
provide injunctive relief in a similar circumstance:

> We believe that the defendants' now public policy
> of non-enforcement of the [statute and regulations],
> particularly in view of the reasons therefor (*i.e.*, that
> enforcement is barred by clear Supreme Court prece-
> dent), moots any challenge to that requirement. While
> we share plaintiffs' concern that the State has not acted
> to remove or amend the statute and regulations, we
> know of no authority by which we can require it to do
> so. The most we could do, and all plaintiffs request of
> us, is to enjoin their enforcement. Federal courts do not,
> as a rule, enjoin conduct which has been discontinued
> with no real prospect that it will be repeated.

*Ragsdale*, 841 F.2d at 1365-66. In the instant case, the
Board did not appeal the district court's clear invalidation
of the campaign law statute. Moreover, the post-litigation
actions of the Board make it clear that there is no real
prospect that the Board will ever enforce this statute. There
is no case or controversy.

Despite being in total agreement with the Board about
the applicability of the statute to its campaign activities,
Right to Life insists that the Board's "voluntary cessation
of a challenged practice does not deprive a federal court of
its power to determine the legality of the practice." *City of
Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)
(explaining that a defendant would be free to return to his

illegal activity once the case was dismissed if the case were necessarily mooted by repeal or revision of a law). This is certainly true in circumstances like those in *Aladdin's Castle*, where the city indicated an intention to re-enact the disputed ordinance if the case were mooted and the district court opinion vacated. *Id.* at 289 n.11.

But here, there is no illegal activity to which to return. The statute was declared to be unconstitutional before it went into effect, and it has never been enforced. The Board's assertions that it will not now enforce the statute are extremely credible given that it has never enforced the statute in the past. Also, unlike *Aladdin's Castle*, our decision bears only upon whether a case or controversy exists in this case, not to the underlying constitutionality of the statute.

Furthermore, "when the defendants are public officials . . . we place greater stock in their acts of self-correction, so long as they appear genuine." *Federation*, 326 F.3d at 929 (quoting *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991)). It is true that the Wisconsin legislature failed to formally repeal the offending statute. *See Federation*, 326 F.3d at 930 (holding that the repeal of a contested ordinance moots an injunction request and noting that "[o]nly in cases where there is evidence that the repeal was not genuine has the [Supreme] Court refused to hold the case moot"). But we follow *Ragsdale* in holding that a case is moot when a state agency acknowledges that it will not enforce a statute because it is plainly unconstitutional, in spite of the failure of the legislature to remove the statute from the books. *See Ragsdale*, 841 F.2d at 1365-66.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's determination that no case or controversy exists as required by Article III.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*