**DEPUY, INC., Plaintiff,**

v.

**ZIMMER HOLDINGS, INC.,**
**et al., Defendants.**

**No. 02 C 4023.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 2, 2005.

Gregory D. Bonifield, Roper & Quigg, Chicago, IL, Steven Raymond Trybus, Harry J. Roper, Lynn A. Malinoski, Woodcock Washburn LLP, Philadelphia, PA, Emma R. Dailey, Michael J. Bonella, Dianne B. Elderkin, Joseph C. Lucci, for Plaintiff.

Michael David Gannon, Christina L. Brown, Baniak, Pine & Gannon, Chicago, IL, Michael Joseph H. Baniak, Andrew J. Kochanowski, Sommers, Schwartz, Silver & Schwartz, P.C., Southfield, MI, Gregory D. Bonifield, Roper & Quigg, Chicago, IL, Steven Raymond Trybus, Harry J. Roper, Emma R. Dailey, Lynn A. Malinoski, Woodcock Washburn LLP, Philadelphia, PA, Michael J. Bonella, Dianne B. Elderkin, Joseph C. Lucci, for Defendants.

## OPINION

RICHARD A. POSNER, Circuit Judge, Sitting by Designation.

This is a suit for patent infringement; discovery is complete and the case has been set for trial. I dismissed another case for patent infringement that had been assigned to me for trial last year because, as emerged shortly before the trial was scheduled to begin, the plaintiff had not owned the patent on which its claim for infringement was based when it had brought the suit. *Pinpoint, Inc. v. Amazon.Com, Inc.,* 347 F.Supp.2d 579 (N.D.Ill. 2004). The situation has recurred in this case.

█ The plaintiff in a patent infringement suit has the burden of proving that when it filed the complaint it either owned the patent on which its suit is based or was an exclusive licensee, and hence the equivalent of an assignee of the patent. *Fieldturf, Inc. v. Southwest Recreational Industries, Inc.,* 357 F.3d 1266, 1268 (Fed.Cir. 2004); *Mentor H/S, Inc. v. Medical Device Alliance, Inc.,* 240 F.3d 1016, 1017 (Fed. Cir.2001); *Textile Productions, Inc. v. Mead Corp.,* 134 F.3d 1481, 1483–84 (Fed. Cir.1998); cf. *Wisconsin Right to Life, Inc. v. Schober,* 366 F.3d 485, 489 (7th Cir.2004). Unless that condition is satisfied, the district court lacks jurisdiction, *Paradise Creations, Inc. v. UV Sales, Inc.,* 315 F.3d 1304, 1309 (Fed.Cir.2003); *Lans v. Digital Equipment Corp.,* 252 F.3d 1320, 1328 (Fed.Cir.2001); *Enzo APA & Son, Inc. v. Geapag A.G.,* 134 F.3d 1090, 1093–94 (Fed.Cir.1998); *Gaia Technologies, Inc. v. Reconversion Technologies, Inc.,* 93 F.3d 774, 779–80, amended, 104 F.3d 1296 (Fed.Cir.1996), just as it would if I brought a suit to enjoin someone from committing a trespass on another person's vineyard in Burgundy.

█ The patent at issue in this case is owned by a wholly owned subsidiary of DePuy, Inc., the plaintiff. DePuy argues that since it owns the patentee, infringement of the patent hurts it because it is entitled to the patentee's profits. But by the same token someone who owned all the stock of a corporation could sue for redress of a tort committed not against him but against the corporation, and that is not permitted. E.g., *Flynn v. Merrick* 881 F.2d 446, 449 (7th Cir.1989); *Twohy v. First National Bank,* 758 F.2d 1185, 1194 (7th Cir.1985); *Rand v. Anaconda–Ericsson, Inc.,* 794 F.2d 843, 849 (2d Cir.1986). It makes no difference if as in this case the sole owner is not an individual but another corporation. *EMI Ltd. v. Bennett,* 738 F.2d 994, 996–97 (9th Cir.1984).

█ In *Schreiber Foods, Inc., v. Beatrice Cheese, Inc.,* 402 F.3d 1198, 1202–04 (Fed.Cir.2005), however, the Federal Circuit allowed a patent suit to continue despite a jurisdictional lapse. See also *Insituform Technologies, Inc. v. CAT Contracting, Inc.,* 385 F.3d 1360, 1371–72 (Fed.Cir.2004). And the Federal Circuit's rulings on issues of patent law bind district courts in cases appealable to that circuit, regardless of the circuit in which the district court is located. *Midwest Industries, Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1358–60 (Fed.Cir.1999); *Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 855–58 (Fed.Cir.1991). The jurisdictional issue presented by this case is arguably such an issue (rather than a general procedural issue), and so I shall assume.

█ Schreiber, a corporation, brought a suit for infringement of a patent that it owned, but in the course of the litigation transferred the patent to a wholly owned subsidiary for tax reasons—but then, after winning a verdict in the suit, caused its subsidiary to retransfer the patent to it. Subject-matter jurisdiction must continue throughout a litigation. *Arizonans for Offi-*

cial *English v. Arizona,* 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); *United States Parole Commission v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Preiser v. Newkirk,* 422 U.S. 395, 402, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975); *Wisconsin Right to Life, Inc. v. Schober,* 366 F.3d 485, 491 (7th Cir.2004). So when during the litigation the patent was transferred to the subsidiary, "Schreiber lost standing to sue for infringement and the case became moot." 402 F.3d at 1203. But noting that there are exceptions to the rule of continuous standing—for example, dismissal of a nondiverse party after the filing of the suit is permissible to preserve (really, to confer) diversity jurisdiction—the Federal Circuit in *Schreiber* refused to order the case dismissed. The rule of complete diversity (that is, that there can be no nondiverse opposing party, even if there are also diverse opposing parties) is merely an interpretation of the diversity statute. *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 530–31, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). Congress is authorized by Article III to authorize diversity suits despite a lack of complete diversity. *Id.*

On this basis might Depuy be permitted to add its subsidiary as an additional plaintiff and proceed to trial? A parent corporation, or for that matter an individual shareholder, employee, supplier, or even customer, could often show that the infringement of a corporation's rights had caused him (or it, if the stakeholder were, as in this case, another corporation) an injury, and, conventionally, nothing more (so far as relevant to this case, or to *Schreiber*) is necessary to confer standing in the Article III sense. E.g., *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 151–53, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Whelan v. Abell,* 953 F.2d 663, 671–72 (D.C.Cir. 1992); *Ensley v. Cody Resources, Inc.,* 171 F.3d 315, 319–20 (5th Cir.1999); *Central*

*Arizona Water Conservation Dist. v. United States EPA,* 990 F.2d 1531, 1537–38 (9th Cir.1993). True, even if you suffer an injury you may not sue unless a legally protected interest of yours has been invaded; that is a rule of standing too. E.g., *Warth v. Seldin,* 422 U.S. 490, 509, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Dunmore v. United States,* 358 F.3d 1107, 1112 (9th Cir.2004). And the commission of a tort or other wrong (patent infringement is a statutory tort) against a corporation is not the infringement of a legally protected interest of its parent corporation, its shareholders, employees, etc., and so they can't sue to redress it. *Flynn v. Merrick, supra,* 881 F.2d at 449; *Twohy v. First National Bank, supra,* 758 F.2d at 1194; *Semida v. Rice,* 863 F.2d 1156, 1161–62 (4th Cir.1988); *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 732 (3d Cir. 1970).

The Federal Circuit in *Schreiber* thought this rule of standing could be bent, however, just as the rule of complete diversity can be bent, because the requirement that one must have a legally protected interest in order to be allowed to sue is also not a requirement imposed by Article III. That at least is the conventional view. E.g., *Warth v. Seldin, supra,* 422 U.S. at 509, 95 S.Ct. 2197; *Dunmore v. United States, supra,* 358 F.3d at 1112; *Weber v. Cranston School Comm.,* 212 F.3d 41, 50–51 (1st Cir.2000). But what am I to make of the Supreme Court's statement in the oft-cited *Lujan* decision that Article III requires that the plaintiff have suffered "an 'injury in fact'—an invasion of a *legally protected interest*"? *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (emphasis added). See, e.g., *Plotkin v. Ryan,* 239 F.3d 882, 885–86 (7th Cir.2001); *Perry v. Village of Arlington Heights,* 186 F.3d 826, 829 (7th Cir.1999); *International Ass'n of Machinists & Aerospace Workers Local Lodge*

*2121 AFL–CIO v. Goodrich Corp.*, 410 F.3d 204, 211 (5th Cir.2005). Such an interest DePuy does *not* have.

But it is difficult to take *Lujan's* formulation at face value. An injury "in fact" is not, as the quoted statement implies, the same thing as the invasion of a legally protected interest, and most cases before and after *Lujan* place the requirement that a plaintiff have a legally protected interest on the "prudential" side of the standing ledger; that is, they treat it as a judicially created limitation on standing that Congress therefore can waive, e.g., *Warth v. Seldin, supra*, 422 U.S. at 509, 95 S.Ct. 2197; *Dunmore v. United States, supra*, 358 F.3d at 1112; *Weber v. Cranston School Committee, supra*, 212 F.3d at 51, as it does when it authorizes suits by bounty hunters, who are not injured by the violation that their suit seeks to redress. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771–74, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000); *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526–27 (7th Cir.1990). It is unclear whether *Lujan* meant to upset this long-standing applecart. See Gene R. Nichol, Jr., "Justice Scalia, Standing, and Public Law Litigation," 42 *Duke L.J.* 1141, 1154–60 (1993); James Leonard & Joanne C. Brant, "The Half–Open Door: Article III, the Injury–in–Fact Rule, and the Framers' Plan for Federal Courts of Limited Jurisdiction," 54 *Rutgers L.Rev.* 1, 2–5, 110–12 (2001). Probably not. See, e.g., Cass R. Sunstein, "What's Standing After *Lujan*? Of Citizen Suits, 'Injuries,' and Article III," 91 *Mich. L.Rev.* 163, 199 (1992) ("this opening statement [in *Lujan* ] breaks little new ground"). Probably all the Court meant was just that not any old injury can satisfy Article III—after all, there is a sense in which I am "injured" when I become upset by reading about the damage caused that fine old vineyard in Burgundy by a band of marauding teetotalers, yet that injury would not be an injury to the kind of personal interest that is necessary to support an invocation of the federal judicial power created by Article III. So I'll assume that the rule of standing that requires the showing of an invasion of a legally protected interest is not graven in Article III and can therefore be lifted in appropriate circumstances.

But while the rule requiring continuous standing that was at issue in *Schreiber* could be abandoned without loss, the rule that confines the right to sue to one who claims that a right of his has been invaded cannot be, for it rests on a more compelling interest. Injuring a firm invariably causes eddies of further injury, and if all the injured can sue they will be treading on each other's toes and swamping the courts. If a patentee's owner can sue to enforce the patent, why not employees of the patentee who will lose their jobs unless the infringement is squelched? But we know they can't sue. So I am not surprised to find no hint in *Schreiber* that the rule of standing that I have been describing, even if it is indeed (as I assume) just a rule of prudential standing, could be bent in the present case. For this is the garden-variety case (like *Pinpoint* ) in which suit is brought by an entity that does not own the property right that it is suing to enforce. *Schreiber*, in contrast, was the exceptional case of a harmless, temporary lapse of standing after the suit was properly filed by the patentee.

So the suit must be dismissed. The defendants ask me to dismiss it with prejudice because they should not have to defend against a refiled suit (with the subsidiary that owns the patent at last substituted for the parent) at this late date. Such a ruling would be premature. I do not know whether the suit will be refiled, or when. If it is refiled and the defendants plead laches or some other basis for dismissal with prejudice because

of delay caused by the plaintiff's jurisdictional error, I will consider at that time the question of whether to dismiss with prejudice.