*363 WILLIAMS, Senior Circuit Judge,
concurring.
I write separately to express my puzzlement over the meaning of Lujan v. Defenders of Wildlife’s requirement that, for “injury in fact,” the plaintiff must show “invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical.” 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (emphasis added) (citations and quotation marks omitted).
The modifier “legally protected” has appeared episodically in Supreme Court opinions since its' introduction in Lujan. Some seven cases employ the phrase, but in only two is it applied. See McConnell v. FEC, 540 U.S. 93, 227, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003) (finding a want of standing because the “injury” of not being able to compete in elections with equal resources is not “legally cognizable”); Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 771-73, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (finding that False Claims Act, by partially assigning government’s injury to relator, confers standing for qui tam suit, but that absent the partial assignment the bounty would no more qualify than would a “wager on the outcome”). Five recite the “legally protected” language, but with no substantive discussion. See Raines v. Byrd, 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997); Arizonans for Official English v. Arizona, 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); United States v. Hays, 515 U.S. 737, 742-43, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995); Adarand Constructors v. Pena, 515 U.S. 200, 211, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995); Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). Two others expressly restate Lujan’s injury-in-fact test without the words “legally protected.” See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (“In Lujan v. Defenders of Wildlife, we held that, to satisfy Article Ill’s standing requirements, a plaintiff must show it has suffered an ‘injury in fact’ that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical ....”) (citation omitted); Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (“First and foremost, there must be alleged (and ultimately proved) an ‘injury in fact’ — a harm ■ suffered by the plaintiff that is ‘concrete’ and ‘actual or imminent,’ not ‘conjectural’ or ‘hypothetical.’ ”) (citation omitted).
There are at least two obvious candidates for interpretation of the phrase. One would be that it simply reformulates pre-existing requirements, particularly that the interest affected be a cognizable one (variants of which are discussed below). Another would be that it imposes a requirement that the interest be one affirmatively protected by some positive law, either common law, statutory or constitutional. Powerful reasons favor the first interpretation.
First, Lujan itself did not purport to announce a new rule but rather appeared aimed at restating the Article III standing triad. See 504 U.S. at 560, 112 S.Ct. 2130 (“Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements.”). In fact, as we noted in Claybrook v. Slater, 111 F.3d 904 (D.C.Cir. 1997), the Lujan Court itself found an interest “cognizable” for standing purposes (the desire to observe an animal species, even if purely for aesthetic purposes) with no discussion of any support in any positive law. See id. at 907 (citing 504 *364 U.S. at 562-63, 112 S.Ct. 2130). Indeed, after using “legally protected” in the standing formula, the Lujan Court never again referred to it except commingled with “justiciable,” namely, in the observation that courts can participate in enforcement “only to the extent necessary to protect justiciable individual rights,” 504 U.S. at 577, 112 S.Ct. 2130 (emphasis added) (citation and internal quotation marks omitted). In Stevens, too, the words seemed in the course of the opinion to morph into “legally cognizable.”
Second, the use of the phrase “legally protected” to require showing, of a substantive right would thwart a major function of standing doctrine — to avoid premature judicial involvement in resolution of issues on the merits. In Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153-54, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the Court rejected the “legal interest” standard, proclaiming the separation of standing from merits issues. Since then it has continually insisted that Article III requires courts to refrain from substantive adjudication in the absence of a “case or controversy.” See Steel Co., 523 U.S. at 89-102, 118 S.Ct. 1003; Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584-85, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). Given the imperative of standing as a threshold to rights determinations, it would seem strange to bring in through the backdoor what Data Processing threw out by the front.
Third, the eases that Lujan itself purports to recapitulate, see 504 U.S. at 561, 112 S.Ct. 2130, seem to demand only that the injury be “cognizable.” See Allen v. Wright, 468 U.S. 737, 755-56, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (finding “stigmatic injury” of racial discrimination “not judicially cognizable”); Warth v. Seldin, 422 U.S. 490, 514, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (discussing statutory expansion of “judicially cognizable injury”); Sierra Club v. Morton, 405 U.S. 727, 740, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (noting that the injury in fact requirement does not “prevent any public interests from being protected through the judicial process”).
Fourth, the Court appears to use the “legally protected” and “judicially cognizable” language interchangeably. Thus, in Bennett v. Spear, 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), a post-Lujan case making no mention of “legally protected,” the Court substituted “judicially cognizable” in the exact place occupied in Lujan by “legally protected,” saying that Article III standing required “that the plaintiff have suffered an ‘injury in fact’— an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.” Id. at 167, 117 S.Ct. 1154 (emphasis added). Others lapse into “cognizable” after an initial reference to “legally protected.” See Raines, 521 U.S. at 820, 117 S.Ct. 2312 (the court must inquire whether the injury is “personal, particularized, concrete, and otherwise judicially cognizable”); United States v. Hays, 515 U.S. 737, 746, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (finding claim of voters’ injury of living in segregated district not cognizable). And, as noted above, Lujan itself reverted to “cognizable” after the one reference to “legally protected” in the formula.
Of the two cases actually applying the “legally protected” phrase, Stevens fits comfortably within the “judicially cognizable” label, at least if that phrase is understood (1) to encompass the other conventionally stated requirements (that the injury be concrete and particularized, and actual or imminent) and (2) possibly to serve as a screen (perhaps open-ended) against interests that it would make little sense to treat as adequate. In Stevens the Court accepted a qui tarn relator’s *365 bounty as legally protected, but only after making clear that someone who had placed a wager on the outcome of a suit would not have standing, 529 U.S. at 772, 120 S.Ct. 1858, and, more generally, that “an interest that is merely a ‘byproduct’ of the suit itself cannot give rise to a cognizable injury,” id. at 773, 120 S.Ct. 1858. This function as an open-ended screen fits Judge Posner’s hypothesis that the Court may have meant “just that not any old injury can satisfy Article III.” DePuy, Inc. v. Zimmer Holdings, Inc., 384 F.Supp.2d 1237, 1240 (N.D.Ill.2005).
McConnell is more perplexing. There the Court seemed to mingle the breadth or diffusion of plaintiffs’ claims (which seems to involve the concrete/particularized and actual/imminent distinction), with issues of substantive right (whether an interest is protected under positive law). Plaintiffs, candidates and voters (and organizations of voters), attacked a provision of the Bipartisan Campaign Reform Act of 2002 that raised the “hard money” limits of prior legislation, claiming that it deprived them of “an equal ability to participate in the election process based on their economic status.” The Court said that it had “never recognized a legal right comparable to the broad and diffuse injury asserted by the ... plaintiffs.” 540 U.S. at 227, 124 S.Ct. 619. The two adjectives might suggest that the defect of plaintiffs’ interest was its breadth or diffusion (though why a competitive interest would be too broad or diffuse is obscure — see, e.g., National Credit Union Administration v. First National Bank, 522 U.S. 479, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998)). But the Court then went on to assert unambiguously merits propositions, quoting Federal Election Commission v. Massachusetts Citizens for Life, 479 U.S. 238, 257, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986), for the point that the right to political “‘free trade’ does not necessarily require that all who participate in the political marketplace do so with exactly equal resources,” and Buckley v. Valeo, 424 U.S. 1, 48, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), for its rejection of any government interest in equalizing relative ability to compete as a justification for burdens on speech in the form of expenditure limits. McConnell, 540 U.S. at 227, 124 S.Ct. 619. In explaining these merits propositions, neither Massachusetts Citizens nor Buckley ever hinted that the interests or rights in question failed for excessive breadth or diffusion.
Of course the “zone of interests” requirement of prudential standing poses the question whether the plaintiffs interest is so incongruent with the statutory purposes as to preclude an inference that Congress might have intended such a party' as a challenger. See Clarke v. Securities Industry Ass’n, 479 U.S. 388, 395 n. 9, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). Some decisions use the “legally protected” language to reject claims on the ground of such incongruity. Thus in Animal Legal Defense Fund v. Glickman, 154 F.3d 426 (D.C.Cir.1998), we said that a hypothetical sadist’s interest in seeing animals living under inhumane conditions wouldn’t qualify, because the statute in question (the Animal Welfare Act) “recognizes no interest in sadism.” Id. at 434 n. 7. We framed the defect as a lack of Lujan-reqmreá legal protection. Id. But Judge Sentelle’s analysis in dissent, saying that the majority had conflated Article III and prudential standing, id. at 449, seems correct. (Neither the hypothetical, nor the choice of its correct standing slot, appears to have been determinative of the outcome in Animal Legal Defense Fund.)[1] See also DePuy, *366 384 F.Supp.2d at 1240 (noting that “most cases before and after Lujan place the requirement that a plaintiff have a legally protected interest on the ‘prudential’ side of the standing ledger”); Grossman v. Dean, 80 P.3d 952, 958 (Colo.App.Ct.2003) (“The requirement that the injury be to a legally protected interest is grounded on prudential considerations.”) (quotation omitted).
Our decision in Claybrook v. Slater is also hard to classify. As already noted, we pointed out that in Lujan itself the Court had found an aesthetic interest in observing animals to qualify as cognizable without actually examining statutes or any source of positive law to see if it was “legally protected.” 111 F.3d at 907. We proceeded to affirm the district court’s dismissal of the suit for want of jurisdiction; but our theory of jurisdictional deficit was that the challenged official decision was one committed to agency discretion by law under 5 U.S.C. § 701(a)(2) and thus exempt from judicial review. Id. at 908-09. Although we characterized our decision as one of standing, the classification seems to have had no consequence; it certainly didn’t involve resolving substantive legal issues. See Steenholdt v. FAA, 314 F.3d 633, 638 (D.C.Cir.2003) (noting that courts lack jurisdiction to review actions committed to agency discretion).
Pending Supreme Court clarification, users of the “legally protected” tag should proceed with caution.

. Under the reading of Stevens offered above, the Animal Legal Defense Fund majority’s position might be reframed as an application of the idea that "judicially cognizable” includes an open-ended screening function.